Osvaldi MONTICELLI

v.

TRIFARI, KRUSSMAN &
FISHEL, INC.

No. 82–307–Appeal.

Supreme Court of Rhode Island.

July 16, 1985.

Raul L. Lovett, Lovett, Morgera, Schefrin & Gallogly, Ltd., Providence, for plaintiff.

Charles H. Anderson, Anderson, Henning, & Anderson, Providence, for defendants.

OPINION

KELLEHER, Justice.

This is an employee's appeal from a decree of the Workers' Compensation Commission. The trial commissioner had found that the employee, Osvaldi Monticelli (Osvaldi), was totally disabled from October 30, 1980, until January 23, 1981, and partially disabled thereafter. In his subsequent appeal to the appellate commission, Osvaldi challenged the trial commissioner's

failure to exclude the testimony of the employer's physician on the basis that a copy of his report, though received by Osvaldi, was not timely forwarded to Osvaldi's counsel, the finding of partial rather than total disability after January 23, 1981, and the adequacy of the counsel fee awarded his attorney. The employer, Trifari, Krussman & Fishel, Inc. (Trifari), also appealed to the appellate commission. Thereafter, the appellate commission entered a new decree that sustained in part and denied in part the appeals of both Osvaldi and Trifari. The commission extended the period of total incapacity until February 4, 1981, but held that the employee was not partially or totally disabled thereafter. The commission also approved the counsel fee previously awarded Osvaldi's attorney.

In the course of his employment as a "degreaser" with Trifari, Osvaldi, who began working for the company in 1948, was required to dip baskets of dirty jewelry into a tank containing a cleaning solution. At a later point in the degreasing process, Osvaldi was directed to spray a chemical known as trichlorethelene (TCH) onto the soiled jewelry. According to Osvaldi, this spraying "makes a fume." Osvaldi additionally testified that the suction device attached to the degreaser and designed to absorb the fumes "doesn't work too good." The trial commissioner found that as a result of his exposure to TCH, Osvaldi had "sustained personal injuries." The appellate commission did not dispute the trial commissioner's determination that Osvaldi had sustained a personal injury in the course of his employment with Trifari. Rather, the important variance between the decrees of the trial commissioner and the appellate commission, and indeed the essence of Osvaldi's appeal to this court, relates to the existence and duration of both Osvaldi's total and his partial incapacities. Before moving on to this facet of the appeal, however, we shall first address Osvaldi's argument that the commission improperly considered the testimony and report of the employer's medical expert, Dr. Frederick J. Fay.

General Laws 1956 (1979 Reenactment) § 28-33-34 provides that an employee shall, after an injury, if so requested by his employer, submit himself to an examination by a physician furnished and paid by the employer. The portion of the statute (§ 28-33-34) with which we are presently concerned further provides:

"The employee shall be entitled to a full, exact, signed duplicate copy of the medical report of the examining physician, which shall be mailed by the employer or carrier to the employee and his attorney forthwith upon receipt of the original report by the employer or carrier. Failure to do so shall make such report or evidence of such examining physician inadmissible if objection is made by the employee to the admission of the report or evidence."

We first observe that even though Dr. Fay examined Osvaldi on December 2, 1980, an original petition for workers' compensation benefits was not filed until February 17, 1981. Thus, at the time of the examination neither Trifari nor Dr. Fay was aware that Osvaldi was represented by counsel. Osvaldi now contends on this appeal, however, that it is immaterial that counsel had not entered an appearance prior to Dr. Fay's examination because § 28-33-34 "contemplates a continuing duty on the part of the employer to submit a copy of the report to counsel." It is unnecessary for us to address this otherwise interesting legal question since we believe that the appellate commission's findings are supported by other medical evidence in the record.

As this court has held previously, the appellate commission's review of the decree appealed from is limited to the record before the trial commissioner, and the appellate commission lacks authority to enlarge or amend the record. *Perfetto v. Fanning & Doorley Construction Co.*, 114 R.I. 624, 337 A.2d 791 (1975); *Larose v. Warwick Brass Foundry, Inc.*, 97 R.I. 459, 198 A.2d 668 (1964). A review of the in-

stant record reveals that the appellate commission had the opportunity to analyze, in addition to the testimony of Dr. Fay, the testimony and report of Osvaldi's witness, Dr. Baccari, a specialist in pulmonary diseases. Doctor Baccari first saw Osvaldi on October 30, 1980, and opined that he was, at that time, suffering from "acute respiratory distress." Osvaldi returned on November 10, 1980, for a complete physical, the doctor finding that his bronchospasm was much improved and that the patient failed to evince indications of chronic lung disease. Finally, on February 4, 1981, Dr. Baccari administered a pulmonary-function test to Osvaldi, the results indicating "no evidence of Bronchospasm."

■ We are convinced that the appellate commission's findings are, in all significant respects, grounded on the testimony and medical report of Dr. Baccari. The commission found that Osvaldi was totally incapacitated from October 30, 1980, through February 4, 1981. The former date reflects Dr. Baccari's initial observation that Osvaldi was suffering from "acute respiratory distress" whereas the latter time reference obviously rests on the negative results of the pulmonary-function test. Since there is additional legally competent testimony to support the commission's findings relative to the extent and duration of Osvaldi's incapacity, we need not address his contention that § 28–33–34 contemplates a continuing duty on the part of an employer to submit to an employee's counsel medical reports generated as a result of an examination by that employer's physician. *Albert Zabbo & Sons, Inc. v. Zabbo*, 122 R.I. 79, 82, 404 A.2d 487, 488 (1979); *Litchman v. Atlantic Tubing & Rubber Co.*, 100 R.I. 352, 359, 216 A.2d 129, 133 (1966); *see also* 3 Larson, *The Law of Workmen's Compensation* § 79.11 at 15–421–426.2 (1983).

Before addressing the issue relating to the inadequacy of the counsel fee awarded Osvaldi's counsel, we shall consider Osvaldi's contention that the Workers' Compensation Commission erroneously concluded that he was ineligible for benefits after February 4, 1981, the date Dr. Baccari administered a pulmonary-function test to Osvaldi with negative results. Osvaldi argues that this test only established that he could perform his duties in a chemical-free environment. It is then asserted that neither this test nor any other record evidence supports the conclusion that Osvaldi was no longer disabled. Our reading of the record does not support this conclusion.

This facet of Osvaldi's appeal basically turns upon one's conception of the scope of the "chemical environment" at Trifari's East Providence plant. Osvaldi urges us, essentially, to consider the entire plant a chemical environment where, if he were to resume employment there, his pulmonary condition would once again flare up. Dennis Charlesworth, Trifari's employee-services manager, whose responsibilities included job posting and safety at the plant, testified on behalf of his employer. Despite objections by Osvaldi's counsel, Charlesworth asserted that the work under various positions at the plant, such as inspector, assembler, janitor, and hand linker, could be performed without direct exposure to TCH. Although in its decision the appellate commission noted that Osvaldi might be exposed "to a very remote smelling of the fumes" if he accepted any of these alternative positions with Trifari, the decision also revealed that the commissioners believed, from their reading of the transcript, that Dr. Baccari was convinced that Osvaldi "could do any type of work as long as he was not exposed to fumes."

■ When we are asked to review the commission's findings, our role is limited to searching the record to see if there is any legal evidence to support those findings; if there is, those findings cannot be disturbed absent fraud. *Cousineau v. ITT Royal Electric*, —— R.I. ——, 484 A.2d 884 (1984); *Beauchesne v. David London & Co.*, 118 R.I. 651, 375 A.2d 920 (1977). We conclude that the commission's determination that Osvaldi was ineligible for benefits after February 4, 1981, is supported by competent legal evidence.

Osvaldi has yet another arrow in his quiver, this one aimed more accurately than the previous two. He contends that the counsel fee awarded his attorney was grossly inadequate, and he encourages us to exercise our supervisory authority to set an appropriate counsel fee.

General Laws 1956 (1979 Reenactment) § 28–35–32, as amended by P.L.1982, ch. 32, art. 1, § 10, provides that costs shall be awarded, including counsel fees, to employees who successfully prosecute petitions for compensation or successfully defend, in whole or in part, proceedings filed by employers. The statute also directs that such costs shall be assessed against the employer by a single commissioner, by the full commission on appeal, and by the Supreme Court on appeal consistent with the services rendered before each tribunal.

In its final decree the appellate commission, finding no abuse of discretion, approved the trial commissioner's previous award of $450 to Osvaldi's counsel for his labors before the single commissioner. Also, Osvaldi's counsel was awarded an additional sum of $250 for services rendered before the appellate commission.

■ We were recently presented with a similar challenge to the adequacy of an award of counsel fees under § 28–35–32 in *Annunziata v. ITT Royal Electric Co.,* —— R.I. ——, 479 A.2d 743 (1984). There, as here, despite record evidence that a specific number of hearing sessions took place, we were unable to assess the adequacy of the fee awarded because of a lack of testimony or an affidavit indicating the actual time devoted to hearings and preparation for hearings. *Annunziata* necessitated a remand, with specific instructions to the Workers' Compensation Commission to conduct an evidentiary hearing consistent with our holding in *Colonial Plumbing & Heating Supply Co. v. Contemporary Construction Co.,* —— R.I. ——, 464 A.2d 741 (1983). What was proper in *Annunziata* is also appropriate here.

The employee's appeal is dismissed in part and sustained in part. The decree appealed from is vacated insofar as it affirms the award of counsel fee by the trial commissioner and establishes an appellate counsel fee without an evidentiary hearing. In this case the commission shall forthwith conduct such a hearing and, following this, set a reasonable counsel fee based on the evidence presented.