Deanna SALGUEIRO

v.

STOP & SHOP, INC.

No. 87–176–M.P.

Supreme Court of Rhode Island.

Jan. 13, 1989.

Raul L. Lovett, Marc B. Gursky (Lovett, Schefrin & Gallogly, Ltd.), Providence, for plaintiff.

Mark M. McKenney, Michael D. Lynch (Higgins, Cavanagh & Cooney), Providence, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on the petition for certiorari filed by Deanna Salgueiro (employee) to review a final decree of the Workers' Compensation Appellate Commission denying her compensation. We quash the decree and remand. The facts of the case as found by the trial commissioner are as follows.

The employee worked for Stop & Shop, Inc. (employer), for about eight years as a check-out cashier. Among her duties was the bagging of items purchased by customers. The bags would sometimes weigh as much as thirty pounds. The employee last worked for the employer on December 15, 1984, when she was forced to leave because of pain in her cervical area. The employee did not experience a specific onset of these symptoms, but her condition became progressively worse until she was forced to leave her employment.

Doctor Henry Izeman, an internal-medicine specialist, first examined employee on March 2, 1984 for a bronchial condition. On November 14, 1984, employee saw him again and complained of pain in the right arm and neck along with numbness and tingling in her right arm. After examining her and taking X-rays, the doctor found a narrowing of the disc spaces at the C–5—C–6 level and the C–6—C–7 level. He diagnosed her condition as cervical-disc disease with radiculopathy. The doctor concluded that employee was partially incapacitated and that her condition was causally related to her employment. He advised her to avoid twisting and heavy lifting. He was aware that she had been bowling prior to the time when her condition became acute and believed that her condition was probably derived from a traumatic event that caused pain in her cervical area for approximately six weeks before she aggravated it while bowling. The doctor testified that it was more probable that bagging caused the traumatic event than the bowling.

Doctor Stanley J. Stutz, an orthopedic surgeon, was appointed as impartial exam-

iner. He examined employee on August 26, 1985, and determined that her condition was C–5, C–6 neuropathy secondary to disc disease. He found that she was unable to do her normal job, which required bagging. He further found that she aggravated her condition while working, notwithstanding the fact that she had an underlying condition of spondylosis between the C–5—C–6 level.

As a result of these findings and testimony, the trial commissioner found that employee had sustained a personal injury arising out of and in the course of her employment, connected therewith and referable thereto, of which injury employer had notice. He found that she was partially incapacitated from February 8, 1985, and continuing. He ordered that employer pay to employee weekly compensation benefits for partial incapacity commencing on February 9, 1985, and continuing, and that employer should pay all reasonable medical and hospital bills in accordance with the Workers' Compensation Act. The trial commissioner made these findings and issued this order although he was aware of the fact that Dr. Izeman, employee's treating internist, had received a letter from employee stating that it was important that the doctor attribute the injury to a work-related incident.

The employer appealed to the Appellate Commission. The Appellate Commission placed great emphasis on the fact that Dr. Izeman had been asked by the employee to causally relate her physical condition to her job. The Appellate Commission also placed emphasis on the admitted fact that employee had sent to her treating physician an article containing certain statements about a survey of cashiers who had work-related injuries. As a result of this evidence the Appellate Commission made the following observations:

"Considering all of the evidence, therefore, we are satisfied that the secondary attempt by the petitioner to relate her physical problems to her work activities as a cashier detracts from the probative effect of her testimony, and we are satisfied upon this state of the evidence, that she had failed to sustain her burden of proving her case by a fair preponderance of probative evidence of a competent nature. The trial commissioner therefore misconceived and overlooked this material evidence. For the foregoing reasons, respondent's reason of appeal No. 5 is sustained. The decree of the trial commissioner is reversed and a new decree shall be entered containing the following findings of fact:

1. That the petitioner has failed to prove by a fair preponderance of legally competent evidence of a probative nature that she sustained personal injuries arising out of and in the course of her employment with the respondent, connected therewith and referable thereto, of which injury the respondent had notice."

In essence, it appears that the Appellate Commission determined that the trial commissioner was clearly wrong solely by reason of the fact that he overlooked or misconceived the communication from employee to her treating physician exhorting him to make a finding that her condition was work related. At the outset it is obvious that the trial commissioner did not overlook this aspect of the case because he specifically mentioned it in his decision. Obviously he did not feel that this communication significantly diminished the credibility of the testimony of Dr. Izeman, particularly when that testimony was considered in light of the direct testimony given by Dr. Stutz, who reached substantially the same conclusion. Nevertheless, the Appellate Commission seemed to regard the "secondary attempt by the petitioner to relate her physical problems to her work activities as a cashier as so detracting from the probative effect of her testimony as to fail to sustain her burden of proof by a fair preponderance of the evidence." However, the Appellate Commission, in faulting the credibility of employee, failed to take into account our well-recognized doctrine that the burden of proving a causal connection between the alleged disability and the em-

ployment in the great majority of cases is complex and requires the presentation of medical testimony for its resolution. *Hicks v. Vennerbeck & Clase Co.,* 525 A.2d 37, 42 (R.I.1987); *Valente v. Bourne Mills,* 77 R.I. 274, 278–79, 75 A.2d 191, 194 (1950). Certainly the determination of the causal connection between the type of disc disease found in this case and the employment, as opposed to other potential causes, is a complex medical question requiring expert testimony. The expert testimony given in this case by the treating physician and the impartial medical examiner was certainly not vitiated or invalidated by employee's exhortation to her physician. In this case, however many articles she may have read, employee's opinion in respect to causation of her neuropathy secondary to disc disease would have been of so little probative value as to be inadmissible. Consequently her credibility on the issue of causation could not have affected the burden of proof on that issue.

We have stated that when the Appellate Commission rejects findings of a trial commissioner relying upon credibility determinations, it must find that the trial commissioner was clearly wrong either because the commissioner obviously erred in judging the credibility of the witnesses or overlooked or misconceived material evidence in arriving at the credibility determination. *Hicks v. Vennerbeck & Clase Co.,* 525 A.2d at 41; *Mulcahey v. New England Newspapers, Inc.,* 488 A.2d 681, 683 (R.I.1985); *Davol, Inc. v. Aguiar,* 463 A.2d 170, 174 (R.I.1983). The rationale of this doctrine is based upon the recognition that the trial commissioner is in the most advantageous position to judge the credibility of witnesses and the weight to be ascribed to their testimony. *Davol, Inc. v. Aguiar,* 463 A.2d at 174.

We have observed in reviewing the Appellate Commission that its findings will not be disturbed by this court so long as legally competent evidence exists in the record to support its findings of fact. *Hicks v. Vennerbeck & Clase, Co.,* 525 A.2d at 41; *Quintana v. Worcester Textile Co.,* 511 A.2d 294, 295 (R.I.1986); *Monticelli v. Trifari, Krussman & Fishel, Inc.,* 495 A.2d 994, 996 (R.I.1985). However, in applying the doctrine enunciated in *Davol, Inc. v. Aguiar,* we must determine whether competent evidence exists to support the Appellate Commission's rejection of findings based upon credibility made by the trial commissioner. In the case at bar we are of the opinion that no such competent evidence is to be found in the record. The expression of an opinion and even exhortation by the employee on an issue where her testimony and therefore her credibility would be of no significance, is insufficient to support a de novo finding that the trial commissioner was clearly wrong or had overlooked or misconceived material evidence. Thus, the ruling by the Appellate Commission that the expert witnesses presented by the employee, including the impartial examiner, did not sustain her burden of proof is unsupported by competent legal evidence.

For the reasons stated, the employee's petition for certiorari is granted; the final decree of the Appellate Commission is quashed. The papers in the case are hereby remanded to the Appellate Commission with directions to reinstate the decree of the trial commissioner.

KELLEHER, J., did not participate.