## LAURA VALENTE *vs.* BOURNE MILLS.

JULY 20, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is an original petition under the workmen's compensation act, general laws 1938, chapter 300, by an employee to recover compensation for the injury alleged to have been caused by an accident arising out of and in the course of her employment, and also for medical expenses incurred by her as a result of such injury. Following a hearing in the superior court a decree was entered denying and dismissing the petition. The case is before us on petitioner's appeal from the entry of that decree.

The testimony of the petitioner, who was the only witness, is undisputed and unimpeached. For reasons that will later appear a detailed statement of the facts thus

established is of prime importance in the circumstances of this case. Petitioner testified that she was a widow, forty-six years old; that she had worked for respondent since she was twelve years old; that during that period of almost thirty-four years she was absent from her work some nineteen years ago when she was operated upon for an ailment in no way connected with her present condition, and for childbirth, and that with such exceptions she had always been in good health.

Petitioner further testified that on May 25, 1948 she was working at a machine as a "speeder tender," that is, replacing empty bobbins for those which had been filled with yarn; that she was lightly clad because her work had to be done in a well-heated room; that while so employed an empty bobbin fell from the upper part of the machine, which extended some distance above her person, and struck her on the nipple of the left breast; and that, as she felt no pain, she continued at her work without reporting the accident. A sample bobbin was introduced in evidence. Generally speaking it may be described as a hollow wooden cylinder three eighths of an inch thick with a crenulated base, encased in metal, protruding one fourth of an inch from the shaft thereof. The diameter of the shaft is one and one-half inches and that of the base is two inches. The entire bobbin is almost one foot in length and weighs approximately one-half pound.

Petitioner further testified that she did not notice anything wrong with her left breast until almost two weeks later; that while bathing on Saturday of the second week she observed that the nipple of that breast was "a little hard, and that pus [was] coming off"; that the following Monday morning she immediately reported the accident and the condition of her breast to the nurse at the mill who, after examining her, informed the "boss," and he in turn told petitioner to go to the "mill doctor" notwithstanding her expressed desire to consult her own doctor; that in compliance with the boss's request she went that same day

to the office of Dr. Cornelius H. Hawes but as he was not available she was examined by a Dr. Gallery, who informed her that she should go to the hospital at once; that she did so the next day and on the following Saturday her left breast was removed by Dr. Hawes. It was agreed that at the time of the accident her average weekly wage was $45.76.

According to petitioner she left the hospital in about three weeks and was thereafter treated by Dr. Hawes until sometime in November. At that time she was unable to raise her left arm to any extent. She returned to her job as speeder tender on March 21, 1949, although she then still had "a lot of trouble" in doing that work. At the time of the hearing in the superior court petitioner had paid or was paying in installments all medical, hospital, X-ray and nursing bills which were as follows: Dr. Hawes, $150; hospital, $199; X rays, $25; nursing at home for four weeks at $1 a day, $28; a total of $402. We add here that petitioner's entire testimony as to the facts was in no way adversely affected nor was her credibility impeached in the slightest degree by respondent's few questions in cross-examination.

The rescript of the trial justice is quite scanty. Following a bare outline of the accident and petitioner's operation it says: "There is *no evidence* that the condition which resulted in the removal of the breast is causally connected with the incident of May 25, 1948." (italics ours) In view of the fact that petitioner's testimony was undisputed and not inherently improbable or otherwise impeached, the only meaning that we can attribute to that language is that she was not entitled to compensation because she had produced no *direct* medical evidence expressly establishing such connection. In our opinion such a conclusion is erroneous.

It is well settled that a reasonable inference from established facts is evidence and that such an inference should be considered and given effect by the trier of the facts. In a

278

compensation case a party is not to be denied the benefit of a reasonable inference that logically and naturally arises from the evidence, especially if the testimony of the only witness is undisputed and unimpeached.

Respondent makes two contentions in support of the trial justice's finding that there was no evidence of causal connection between the accident and injury. First, using the language of its brief, it contends that there is no such evidence because "Nothing in the record shows what medical diagnosis was made. The *pathological* nature of the condition which necessitated removal of petitioner's breast does not appear." (italics ours) And secondly, that in any event the evidence was open to two reasonable inferences, one in favor and the other against the petitioner, and that since the trial justice decided the matter adversely to the petitioner we are powerless to disturb that finding by force of the act and numerous decisions of this court in conformity therewith.

The first contention, as stated, if literally followed would turn a compensation case into a clinic where doctors seek to determine the "diagnosis" of a patient's ailment and the "pathological nature" of that condition according to the more exacting norms of medical science. The application of so strict a rule to establish the required causal relationship in the field of law, where the ultimate objective is the attainment of substantial justice according to the remedial purposes and provisions of the act, would cast an unfair burden upon a person injured by accident. See *Emma* v. *A. D. Juilliard & Co.*, 75 R. I. 94, 99. Neither the compensation act nor the pertinent decision of any court that has come to our attention requires such a quantum of proof. Construed consistently with the rules of law rather than of medicine, respondent's contention under consideration is in substance that there is no evidence of causal connection since there is no direct *medical* testimony of diagnosis to that effect.

We concede that in the great majority of cases such

testimony ordinarily is necessary because of the seeming absence of connection between a particular accident and a claimed resulting injury. But in other cases involving special and peculiar circumstances, medical evidence, although highly desirable, is not always essential for an injured employee to make out a prima facie case, especially if the testimony is adequate, undisputed and unimpeached. Thus where, as in the instant case, injury appears in a bodily member reasonably soon after an accident, at the very place where the force was applied and with symptoms observable to the ordinary person, there arises, in the absence of believed testimony to the contrary, a natural inference that the injury, whatever may be the medical name, was the result of the employment. Absolute certainty is not required in any case. If the reasonable probabilities flowing from the undisputed evidence disclose a progressive course of events beginning with an external accident in which each succeeding happening including the injury appears traceable to the one that preceded it, medical evidence is not essential for an injured employee to make out a prima facie case.

An inference, if rational and natural, based on proven facts will stand even though not supported by expert medical opinion. *Swett's Case,* 125 Me. 389; *Crowley's Case,* 130 Me. 1; *Harrington's Case,* 285 Mass. 69; *Bontempt* v. *Suburban Construction Co.,* 107 Pa. Super. 258; *Benci* v. *Vesta Coal Co.,* 131 Pa. Super. 435; *Colorado Fuel & Iron Corp.* v. *Frihauf,* 58 Wyo. 479. Since petitioner's testimony in the instant case is not disputed or otherwise impeached and her credibility is unquestioned, the only reasonable inference to be drawn from the closely related sequence of events established by such testimony in our judgment is that of a causal connection between the accident and her consequent injury.

Respondent refers us to the cases of *Urbany* v. *Frick Coke Co.,* 140 Pa. Super. 534; *Baughman* v. *Hockensmith Wheel & Mine Car Co.,* 158 Pa. Super. 314; *Drakulich* v.

*Industrial Commission,* 137 Ohio St. 82. Those cases, all of which were fully litigated, are clearly distinguishable in their facts from the case at bar. In the *Urbany* case there was not only a serious question as to the happening of an accident but also conflicting medical testimony as to causal connection. In deciding against the employee the court, in conformity with cases cited, at page 537 said: "We do not have an unbroken sequence of events of a well established accidental injury being followed by results that are so directly and immediately, or naturally and probably, attributable to the injury that the causal connection between them does not depend upon the testimony of medical experts, but may be inferred by laymen * * *."

In the *Baughman* case the court again refused to apply the above quoted rule to the conflicting factual and medical evidence and at page 318 said: "The injuries complained of as causing claimant's disability were not so immediately and directly the result of the accident that the causal connection could be established by a layman. Claimant's physical condition was complicated by a number of systemic disorders which in all probability were unassociated with the injuries sustained in the accident."

In the *Drakulich* case an employee strained his back by accident on June 9, 1932. He died on August 8, 1933 of cancer of the liver. His widow filed a claim as a dependent for a death award, which was denied. The court held that in the absence of competent medical testimony there was not sufficient evidence to establish the fact of causal connection and at page 88 said: "This issue presented a field of scientific inquiry where expert medical testimony is required to furnish the answer. It could not possibly be within the knowledge of lay witnesses or members of the jury." *Green's Case,* 266 Mass. 355, upon which the respondent also relies, turned on the probative value of conflicting medical testimony as to whether trauma in a certain part of the body could accelerate a quiescent tuberculosis of an entirely different organ. In this respect

it is similar to the *Drakulich* case. These two cases furnish a clear example of that class of cases where, as we stated earlier in this opinion, medical testimony is necessary to establish the relation of cause and effect.

The cases upon which the respondent relies therefore are not applicable to the special circumstances in the instant case. Here, in the absence of any medical or other testimony to the contrary, the sequence of events which followed closely after the accident was such as to raise a rational and natural inference that the blow on the nipple of petitioner's left breast caused or aggravated and accelerated a condition, whatever its pathology and diagnosis may have been medically, that required a removal of the breast. The undisputed evidence before us is that, with the exceptions hereinbefore noted, the petitioner had enjoyed good health for almost thirty-four years prior to the accident, and that at no time before such occurrence did she have any trouble whatever with her breast or any bodily part connected therewith. Furthermore, the injury manifested itself at the very situs where force was applied by the falling bobbin, that is, at the nipple of the left breast and not in an entirely different part of the body, as in *Drakulich* v. *Industrial Commission* and *Green's Case, supra.*

The entire course of events from the time of the accident to the operation for petitioner's injury, which was established by undisputed and unimpeached testimony, was in our judgment sufficient to raise only the reasonable and natural inference that the accident and injury were causally related, thus making out a prima facie case for the petitioner. It then became incumbent upon the respondent to go forward with evidence showing that the condition of the breast which required its removal was due to some ailment entirely disassociated from the accident. However, notwithstanding that apparently it was fully informed of the medical history respecting petitioner's breast after the accident, respondent elected to rest its case solely on her testimony.

Respondent's second contention is that the evidence being open to two opposite inferences as to causal connection we are precluded from disturbing the trial justice's decision. This contention is based on an unwarranted assumption. For the reasons heretofore stated the present case is not one of conflicting inferences. It is a case where the only fair inference that rationally and naturally arises from the uncontradicted evidence is that of causal connection between accident and injury. In our opinion the petitioner has made out a prima facie case which, in the absence of any evidence for the respondent to the contrary, entitles her to compensation for total incapacity on the basis of an average weekly wage of $45.76 from June 7, 1948, when her incapacity commenced, to March 21, 1949, when she returned to work for the respondent, and for medical expenses as provided in the act as amended.

The petitioner's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for entry of a decree in accordance with this opinion.

*Fred Brosco,* for petitioner.

*Boss & Conlan, James C. Bulman,* for respondent.