We granted the petition for writ of certiorari, which alleged a conflict in the holding of the Court of Civil Appeals in this case and prior holdings of this Court and the Court of Civil Appeals. The petition specifically makes reference to the essence of the Court of Civil Appeals' holding as contained in the following language from its opinion:
 "To establish medical causation the employee must show that the accident caused or was a contributing cause of the injury for which compensation is sought. [County of Mobile v.] Benson, 521 So.2d 992 [(Ala.Civ.App. 1988)]. See Valley Steel Construction v. Prater, 479 So.2d 1259
(Ala.Civ.App. 1985). Medical causation must be established through medical testimony, i.e., the testimony of doctors. Benson, 521 So.2d 992; [Ragland Brick Co. v.] Campbell, 409 So.2d 443
[(Ala.Civ.App. 1982)].
 "The only medical testimony in this case was provided by the depositions of two doctors who had treated the employee, Dr. J. Clayton Davie, a neurosurgeon, and Dr. Donald Autry, an orthopedic surgeon. Each doctor testified regarding his diagnosis and treatment of the employee.
 "Neither doctor, however, was asked to give — and neither gave — an opinion as to whether the employee's present disability or back condition could have been caused by the alleged pull box accident of November 8, 1983. In this instance without such testimony there is no proof of medical causation."
To the extent that the Court of Civil Appeals' opinion555 So.2d 1059, appears to establish the invariable, abstract rule that, in all circumstances, medical causation, as an element of the employee's burden of proof, can never be found by the trial court from evidence other than that supplied by the "testimony of doctors," we agree with the petitioner. As Professor Larson points out in his treatise on the law of workmen's compensation:
 "To appraise the true degree of indispensability which should be accorded medical testimony, it is first necessary to dispel the misconception that valid awards can stand only if accompanied by a definite medical diagnosis. True, in many instances it may be impossible to form a judgment on the relation of the *Page 1062 
employment to the injury, or relation of the injury to the disability, without analyzing in medical terms what the injury or disease is. But this is not invariably so. In appropriate circumstances, awards may be made when medical evidence on these matters is inconclusive, indecisive, fragmentary, inconsistent, or even nonexistent."
3 A. Larson, The Law of Workmen's Compensation, § 79.51(a), at p. 15-426.128 (1988). Indeed, "[o]ur courts have explicitly stated that expert medical testimony is not a prerequisite to a finding of a physical disability, its degree or duration."Fruehauf Corp. v. Prater, 360 So.2d 999, 1002 (Ala.Civ.App.), cert. denied, Ex parte Fruehauf, 360 So.2d 1003 (Ala. 1978). See, also, Grumm v. Neptune Meter Co., 472 So.2d 1067
(Ala.Civ.App. 1985); City of Mobile v. Ludgood, 455 So.2d 41
(Ala.Civ.App. 1984); Bankhead Forest Industries, Inc. v. Lovett,423 So.2d 899 (Ala.Civ.App. 1982); Conagra v. White,348 So.2d 502 (Ala.Civ.App. 1977); and Stewart v. Busby,51 Ala. App. 242, 284 So.2d 269 (1973).
In his discussion of the necessity, or not, of medical evidence on the issue of causation, Professor Larson gives several examples where the factfinder is authorized to find the causation element absent medical evidence to that effect:
 "This view — that in appropriate circumstances medical testimony need not necessarily establish specifically and positively the pathological diagnosis and etiology of a disease or condition — has been accepted by most courts. For example, an award based on the theory that a strain, accompanied by a sharp pain at the base of the neck, and followed by continuous pain, caused or accelerated the cancer that later led to the worker's death, would not be reversed because the doctors all admitted that the cause of cancer was not known. Two doctors testified that the strain probably aggravated the cancer, and that was enough to support the award.
 "The Rhode Island Supreme Court's opinion in Valente [v. Bourne Mills, 77 R.I. 274, 75 A.2d 191
(1950)], continued, on the subject of the lack of medical testimony on causation, as follows:
 " 'Thus where, as in the instant case, injury appears in a bodily member reasonably soon after an accident, at the very place where the force was applied and with symptoms observable to the ordinary person, there arises, in the absence of believed testimony to the contrary, a natural inference that the injury, whatever may be the medical name, was the result of the employment.' [77 R.I. at 279, 75 A.2d at 194.]
 "One of the most familiar applications of this approach is to back injuries that occur suddenly as a result of an obvious accident or strain."
3 A. Larson, The Law of Workmen's Compensation, § 79.51(b), (c), at pp. 15-426.149 — .160 (1988).
As the finder of facts, then, the trial court is authorized to draw any reasonable inference from the evidence, including conclusions of medical facts that are not within the peculiar knowledge of medical experts. Warrior Stone Contracting Co.v. De Foor, 241 Ala. 227, 2 So.2d 430 (1941). As the Court of Civil Appeals' opinion recognizes, the test is set out inFordham v. Southern Phenix Textiles, Inc., 387 So.2d 204, 205
(Ala.Civ.App.), cert. denied, 387 So.2d 206 (Ala. 1980):
 "To establish medical causation the employee must show that the exertion or strain or the exposure to conditions was, in fact, a contributing cause of [the employee's] injury."
Whether the claimant has satisfied this test in the absence of medical testimony, or by lay testimony coupled with medical evidence, must be determined on a case-by-case basis.
This point is also recognized by the Court of Civil Appeals: "In this instance without such testimony there is no proof of medical causation." (Emphasis supplied.) The issue, then, is whether the totality of the circumstances of this case supports the trial court's finding of medical causation. Our thorough review of the record convinces us that the Court of Civil Appeals erred *Page 1063 
in reversing the trial court's judgment in favor of the employee.
In so holding, we do not necessarily disagree with the position of the employer that the nature of the employee's alleged injury may require expert testimony to establish the medical causation element of his claim. Central to our holding, affirming the trial court's finding of medical causation, is the proposition that lay testimony may combine with medical testimony to supply this requisite proof; and that the medical testimony, when viewed in light of lay evidence, may amply support the medical causation element without the expert witness's employing any particular requisite language. It is in the overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay and expert evidence, and not in the witness's use of any magical words or phrases, that the test finds its application. Odell v. Myers,52 Ala. App. 558, 295 So.2d 413 (1974).
The controversy over the medical causation element centers around the defendant's contention that the employee's present back condition was not caused by the subject accident but by a pre-existing condition dating back to the complaints by the employee in 1978 and 1980. We quote directly from the trial court's judgment, under the section entitled "PRE-EXISTING INJURY":
 "There is a difference of opinion as to the exact back injury for which the plaintiff was being taken off work. The defendant contends it was for a pre-existing injury in 1978 and 1980 and the plaintiff contends that he had not experienced any problems with his back since 1980 until the incident of November 8, 1983; and that the pain was in a different area of his back than before and that he never had leg pain until November 8, 1983. Further, plaintiff's wife's testimony was that the plaintiff had not complained of back problems prior to November 8, 1983. The defendant did, however, introduce medical records as to previous back complaints by the plaintiff in 1978 and 1980 from Carraway Hospital, but there was no testimony from anyone that the back complaints five years ago had anything whatsoever to do with the plaintiff's present condition. The plaintiff further testified he had worked from 1980 to November 8, 1983, without restraints. The Court, therefore, finds that none of the plaintiff's present condition resulted from any prior infirm condition."
Here, the employee's version of the accident, including how the accident occurred, the onset of symptoms, and his seeking of medical treatment for the immediate resultant injury, was expressly accepted as credible evidence by the trial judge. The trial judge also had before him the stipulation of the parties that the employer had paid weekly workmen's compensation benefits over an extended period of time, as well as a substantial portion of the medical and drug bills incurred by the employee following the accident.
While the two treating surgeons, whose deposition testimony was before the trial court, were never asked the direct question whether their patient's present disability could have been caused by the alleged accident, their testimony can hardly be read as being to the contrary effect. Both physicians testified that they took a detailed "patient history" that included the employee's version of the alleged accident; that they accepted this history as an important factor in making their diagnosis; and that they treated the patient accordingly.
Specifically, the treating neurosurgeon, Dr. Davie, testified that, upon receiving the employee's history of jumping into a manhole and subsequently experiencing pain, "It was my impression that he probably had — he had received a musculoskeletal back strain" and that his present condition was not related to any pre-existing back condition.
Moreover, the orthopedic surgeon, Dr. Autrey, who later became the employee's treating physician, testified, based upon the history of the accident and his examination, findings (both objective and subjective), and treatment, that the patient was suffering from a permanent partial (20-25%) *Page 1064 
physical disability. Even the doctor's affirmative response to the question of whether the employee's disabling back injury could also have occurred from other events or conditions necessarily carried with it the inference that itcould have resulted from the accident in question. Thus, the trial judge was justified in finding that the substance of the expert evidence, when considered in light of the totality of the evidence, was to the effect that the employee's permanent partial disability is the proximate result of his industrial accident.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
KENNEDY, J., not sitting.