CRAWLEY, Judge.
Drummond Company, Inc. (“the company”), appeals from the trial court’s award of workers’ compensation benefits to Glen Green (“the worker”). We affirm.
The worker sued the company seeking workers’ compensation benefits based upon two alleged injuries that he sustained in the course of his employment: (1) an April 9, 1999, injury in which the worker injured his neck and shoulder while attempting to step off of a drill, and (2) a July 13, 1999, injury in which the worker injured his stomach while attempting to lift a cross tie from a drill deck.[1] The company answered and denied liability. Following discovery, the trial court conducted a hearing on the worker’s claims, determined that the worker was permanently and totally disabled, and awarded workers’ compensation benefits accordingly. The company filed a motion for a new trial; the trial court denied the motion. The company then filed a notice of appeal to this court.
On appeal, the company argues that the trial court erred in finding that the worker was permanently and totally disabled because, the company alleges, the worker failed to present substantial evidence of medical and legal causation. The standard of review this court employs when review *978 ing a trial court’s judgment in a workers’ compensation case is well settled. The Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975, provides that “[i]n reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.” § 25-5-81(e)(1), Ala.Code 1975. Our supreme court has stated the standard of review to be employed as to a trial court’s findings of fact as follows:
“[U]nder the applicable standard of review, we will not reverse the trial court’s finding of fact if that finding is supported by substantial evidence — if that finding is supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
Ex parte Trinity Indus., Inc., 680 So.2d 262, 268-69 (Ala.1996)(quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and citing § 12-21-12(d), Ala.Code 1975). See also § 25-5-81(e)(2), Ala.Code 1975. Further, “[t]he [1992 Workers’ Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995). In considering an argument very similar to the one being made here by the company, our supreme court recently observed:
“ ‘[F]or an injury to be compensable under the Workers’ Compensation Act, the employee must establish both legal and medical causation.’ Ex parte Moncrief, 627 So.2d 385, 388 (Ala.1993). ‘Once legal causation has been established, i.e., that an accident arose out of, and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought.’ Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ.App.1989).
“In Ex parte Price, 555 So.2d 1060, 1061 (Ala.1989), this Court held that expert medical testimony is not required to prove medical causation by substantial evidence. Thus, it [is] not necessary for [a worker] to present testimony from a medical expert tying [an] injury to [a] workplace accident. However, the Court also stated in Price that ‘[i]t is in the overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay and expert evidence, and not in the witness’s use of any magical words or phrases, that the test finds its application.’ Price, 555 So.2d at 1063 (citing Odell v. Myers, 52 Ala.App. 558, 295 So.2d 413 (1974))(em-phasis omitted; emphasis added).”
Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1121-22 (Ala.2003).
At trial, the trial court received testimony from the worker; William Crunk, a vocational-rehabilitation counselor; and Renee Smith, a second vocational counsel- or. The deposition testimony of several physicians — Dr. Abdur Rahman Sahibza-da, Dr. Bill Yates, Dr. James Stanford Faulkner, and Dr. Roland Rivard — who had treated or examined the worker were also admitted into evidence.
At the beginning of trial, the company stipulated that the injury the worker received to his neck and shoulder on April 9, 1999, was work related. The worker testified that he had continued to suffer pain from the April 1999 injury and that surgery had been recommended as a treatment for that injury. However, the worker received workers’ compensation benefits for that injury and was later allowed to return to work without restrictions.
The worker alleged that he later suffered an injury to his stomach on July 13, *979 1999; he described that incident in his testimony as follows:
“I was picking up a cross tie on the back of a drill. We have to use the cross tie to lay across the back to change the drill bit. And on this drill deck it leaked all the time and dust falling on it and the cross tie was laying there full of dirt and grease and mud and whatever, and I reached down to pick it up and the suction from that mud and grease and stuff on the back of the deck, I reached down to get it and the suction had it sucked down so tight that I reached and pulled real hard and when I did it broke loose. When I did I felt something pop and hit me in the chest right here, like somebody stuck me with a knife.”
The worker further testified that he went to an emergency room that night for treatment; however, as was pointed out by the company’s counsel, there are no records that support that the worker had in fact done so.
After receiving the stomach injury, the worker returned to work and continued working through the end of December 1999. The worker first visited his own personal physician, Dr. Yates, complaining of pain in his sternum area on August 25, 1999. The worker returned to see Dr. Yates again on September 1, 1999. The worker testified that he informed Dr. Yates that the injury to his sternum was the result of the cross-tie incident; that testimony is supported by Dr. Yates’s deposition testimony, but Dr. Yates’s medical notes do not indicate that the worker informed him of the cross-tie incident. However, the cross-tie incident was mentioned in an order for a CAT scan that was made by Dr. Yates on September 1, 1999.
The evidence indicated that the worker had participated in rodeos, and the company’s counsel elicited testimony from the worker verifying that he had suffered various injuries while participating in that activity. The evidence also indicated that the worker had fallen from a horse sometime in close proximity to the date he had allegedly injured his stomach or sternum as a result of the cross-tie. incident.[2] Dr. Yates’s medical note from the worker’s September 1, 1999, visit stated, in pertinent part, that “about a month or so prior ... a horse fell over and the horn of the saddle hit [the worker] in the middle of the gut.” The worker testified that the fall caused him no injury and that he did not recall telling Dr. Yates that the horn of the saddle had hit him' in the stomach. No treating physician other than Dr. Yates received a medical history that mentioned the worker falling from a horse. Whether the worker’s injury to his stomach or sternum area was the result of his fall from a horse or the cross-tie. incident, i.e., the issue of medical causation, was the most contested issue of the proceedings below.
Dr. Yates referred the worker to Dr. Sahibzada, a general surgeon who normally performs abdominal surgeries. Dr. Sa-hibzada first examined the worker on September 10, 1999; Dr. Sahibzada thought that the worker was suffering from a muscle strain and placed the worker on medication. Dr. Sahibzada stated in his deposition that the worker did not respond to medication and that he therefore received the worker’s consent to perform an exploratory procedure and possible surgery. An exploratory procedure was performed on the worker January 7, 2000, after the worker had stopped working for the company as a result of, he said, the pain associated with his stomach or sternum injury. In performing the exploratory *980 procedure, Dr. Sahibzada testified that he was surprised to find that the worker’s xiphoid process, identified by Dr. Sahibza-da as a tongue-like cartilage that hangs down from the rib cage that attaches to a person’s abdominal muscles, was broken. Dr. Sahibzada stated that the injury was unusual; he had never seen a patient with a broken xiphoid process. Dr. Sahibzada, when made aware of the worker’s fall from the horse, testified that a direct hit from the horn of a saddle would be more consistent with the worker’s injury; however, he also testified that it was conceivable that the reported cross-tie incident caused the injury. Dr. Sahibzada further opined that the worker’s injury was likely caused by a combination of both the worker’s fall from the horse and the cross-tie incident, and that, as a result of the injury to his xiphoid process, the worker was permanently and totally disabled.
The worker’s personal physician, Dr. Yates, testified that he had treated the worker since 1993 or 1994 and that he related both the worker’s neck and shoulder injury and the worker’s xiphoid-pro-cess injury to his work. However, he also agreed with the observation made by Dr. Sahibzada that the xiphoid-process injury was likely caused by both the fall from the horse and the cross-tie incident. Dr. Yates opined that the worker was 100% disabled and that he could not return to work. Dr. Rivard performed an independent medical examination on the worker, and, based upon that examination, he concluded that the worker could return to work on a full-time basis in a medium-work category with limitations on lifting, carrying, climbing, balancing on certain surfaces, and stooping. Dr. Faulkner had treated the worker for his neck and shoulder injury and had determined that the worker had reached maximum medical improvement for those injuries in March 2002; he assigned the worker a 5% impairment rating.
The trial court received vocational testimony from William Crunk and Renee Smith. Crunk stated that the worker’s age was not a factor in his assessment of whether the worker was vocationally disabled, but that he had considered that the worker had failed to receive a high school diploma or to obtain a GED in his assessment. He testified that the worker’s work history included jobs that required heavy lifting and that the worker had no trans-ferrable job skills. He concluded that the worker was 100% vocationally disabled. Renee Smith stated that upon review of the worker’s medical records from his neck and shoulder injury, she saw nothing that would prevent his return to work. She testified that she could not draw a conclusion concerning the worker’s xiphoid-pro-cess injury because, she said, the medical records were unclear as to causation and the restrictions placed on the worker.
The company relies heavily on the opinion released by our supreme court in Ex parte Southern Energy Homes, supra. In Southern Energy Homes, the worker claimed to have injured her back while vacuuming manufactured homes for her employer, although she did not complain of a specific trauma that caused her injury, only that her back was causing her more pain than normal, i.e., she claimed that she had suffered a soft-tissue injury. Three physicians who treated the worker determined that the worker suffered from degenerative disk disease, and a fourth physician concluded that ‘“[t]he pattern of [the worker’s] injury did not follow her complaints.’ ” 873 So.2d at 1119. The trial court determined that the worker was permanently and totally disabled and awarded benefits accordingly; this court affirmed without an opinion, see Southern Energy Homes, Inc. v. Riddle (No. 2010428, August 9, 2002), 876 So.2d 529 *981 (Ala.Civ.App.2002)(table). The supreme court reversed this court’s judgment, noting that none of the doctors could say with any degree of certainty that the worker’s back condition was due to her alleged on-the-job injury. The supreme court opinion further stated:
“Even viewed in the light most favorable to [the worker], the testimony of [the worker’s] doctors at best established a possibility that [the worker’s] back condition was caused by her alleged on-the-job injury. ‘It is a well established principle that evidence presented by a [workers’] compensation claimant must be more than evidence of mere possibilities that would only serve to “guess” the employer into liability.’ Hammons [v. Roses Stores, Inc.,] 547 So.2d [883,] 885 [(Ala.Civ.App.1989).] Yet possibilities are all that [the worker’s] many doctors could provide. Thus, the only evidence of medical causation of the back injury came from [the worker’s] own testimony.
[[Image here]]
“Looking at the ‘overall substance’ of the evidence, ‘viewed in the full context of all the lay and expert evidence,’ [Ex parte] Price, 555 So.2d [1060,] 1063 [(Ala.1989)], [the worker’s] testimony alone cannot be said to constitute ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer’ medical causation. West v. Founders Life Assurance Co., 547 So.2d [870,] 871 [(Ala.1989)]. This is not to say that a plaintiffs testimony alone can never constitute substantial evidence of medical causation, but rather that in this case the evidence as a whole weighs heavily against finding the plaintiffs testimony alone to be substantial evidence of medical causation.”
873 So.2d at 1122.
We find that the facts of, and the evidence presented in, this case are distinguishable from the facts and evidence present in Southern Energy Homes. In this case, the worker presented evidence tending to establish that he suffered an injury from an accident at his workplace, not a soft-tissue injury, and that that accident was a contributing cause of his injury. See Ex parte Trinity Indus., Inc., 680 So.2d 262 (Ala.1996). Further, considering the “overall substance” of the evidence received by the trial court, we conclude that there was substantial evidence presented by the worker from which the trial court could have determined that the worker was permanently and totally disabled as a result of his xiphoid-process injury, and that that injury was contributed to by the cross-tie incident that occurred while he was working for the company. It was not necessary that the worker present expert medical testimony to establish substantial evidence of medical causation. See Ex parte Price, 555 So.2d 1060, 1061 (Ala.1989), and the dissenting opinions authored by Justices Lyons, Johnstone, and Harwood in Southern Energy Homes. The worker clearly testified that the fall from the horse caused him no injury. There was no clear rebuttal of this testimony, and the testimony of the worker’s treating physicians was that the worker’s xiphoid-process injury was consistent with, and could conceivably have been caused by, the cross-tie incident. While there was testimony to the effect that the fall from the horse was more consistent with the injury the worker received, or that the injury was likely caused by a combination of both the fall from the horse and the cross-tie incident, the trial court was in the best position to weigh that conflicting evidence in making its determination that the worker had in fact suffered a work-related injury and that he was permanently and totally dis *982 abled. Accordingly, we conclude that there was substantial evidence presented by the worker to support the trial court’s judgment. Therefore, the trial court’s judgment is due to be affirmed.
AFFIRMED.
YATES, P.J., and PITTMAN, J., concur.
THOMPSON, J., concurs in the result, without writing.
MURDOCK, J., dissents, without writing.

. The worker also filed an amended complaint seeking workers’ compensation benefits for an alleged hearing loss; he later dismissed the hearing-loss claim.

. The worker testified that he could not recall exactly when the fall had occurred.