On Application for Rehearing

THOMPSON, Presiding Judge.
The opinion of January 22, 2016, is withdrawn, and the following is substituted therefor.
Lowe’s Home Centers, LLC (“Lowe’s”), appeals from an order of the St. Clair Circuit Court (“the trial court”) finding that Sarah Brown, its employee, had sustained an injury to her back arising out of and during the course of her employment with Lowe’s. In the order, the trial court directed Lowe’s to pay for Brown’s medical treatment and an unspecified amount of temporary-total-disability benefits.
The record indicates the following. On August 29, 2014, Brown filed a workers’ compensation action against Lowe’s, seeking medical treatment for her back and an award of workers’ compensation benefits. Lowe’s answered, denying that Brown had a work-related injury, and it filed a motion requesting a hearing to determine what Lowe’s called “medical necessity.” In the motion, -Lowe’s specifically requested “a judicial determination of the medical necessity and causal relationship for any treatment of [Brown’s] back.” The trial court granted Lowe’s request and held an evidentiary hearing on the issue of com-pensability on April 10, 2015.
The evidence presented at the April 10, 2015, hearing indicated the following. Brown had worked at Lowe’s for three years before the events at issue in this action. On May 19, 2014 — a Sunday— Brown reported to work in the outdoor-power-equipment department of the Lowe’s store in Leeds. She testified that she had been off work the day before and had come in to work at 4 a.m. Amber Gargus, an assistant manager at the Lowe’s store in Leeds, worked overnight on May 18 into May 19, 2014, to prepare the store for inventory. She testified that she was Brown’s supervisor. Gargus said that, when Brown came in at 4 a.m., Gar-gus asked her to assist in moving some six-foot stacks of plastic Adirondack chairs from the back of the store to the front. Gargus said that Brown told her she would help with the chairs “but that she may not be able to do much that day because she had hurt herself over the weekend.” Gar-gus then added that Brown told her she had hurt her back. Gargus said she left the store for the day at 5 a.m.
Brown denied that the discussion Gar-gus described had taken place. She said that she saw Gargus and another Lowe’s employee in the lawn and garden department when she “clocked in” on the morning of May 19, Brown testified that she *499 acknowledged Gargus and the other employee and that Gargus gave her “brief orders on what they were doing.” Brown then went and “started on the truck,” which, she said, meant that she helped to unload lawn mowers and “stuff’ from the truck and put the merchandise out in the store. Gargus testified that “unload associates” were paid to unload the trucks and that the only reason associates like Brown were asked to come in at 4 a.m. was to put away larger items before customers arrived. Gargus said that she was not aware that Brown had unloaded the truck on the morning of May 19, 2014. Brown said that the unload associates were understaffed that morning and so she had helped to unload the truck. She described the task as strenuous, physical work and said that her back was not hurt before she unloaded the truck.
Brown testified that, by about 7:00 or 7:30 a.m., she had put away all the small freight but that she had had to wait for another associate from her department to arrive so that she could put away air-conditioning units. That job entailed using an “order picker,” which was described as being like an elevator or fork lift that was used to raise heavy merchandise.
Brown testified that Heather Lauder-dale, another Lowe’s employee, arrived at work and that she asked Lauderdale to help with stacking the air-conditioning units. Because Lauderdale was pregnant, Brown said, she was to “delegate” Brown as Brown used the order picker to raise the air-conditioning units about ten feet up and then push them onto the rack. Brown said that the units weighed about 150 pounds each. After the units were raised, Brown said, she had to “bend, pivot, and stoop” to slide or push one unit on top of another. Brown said that, as she was trying to place one unit on the rack, she “felt an immediate pop in [her] back exactly four times, and [her] legs went completely numb and [she] had shooting pain down both sides.” Brown said that she was able to lower the order picker because it was operated by foot. Brown also said that, at that time, Lauderdale was at a desk talking on the telephone to someone at her son’s day-care facility because the child had been ill that morning.
Lauderdale testified that she did not spot for Brown the morning of May 19, 2014, and that Brown did not use the order picker that morning. Lauderdale said that, when she arrived at work between 7:00 and 7:30 a.m., Brown told her that her lower back was hurting and that Brown believed it was her sciatic nerve that was bothering her. Lauderdale also said that Brown had told her she had used the order picker about four days the week before.
Brown testified that the accident occurred at 8:30 a.m. She said that she talked to Jerry Crossley, Lowe’s human-resources manager, and that, then, she made a 10 a.m. appointment that same day to see a chiropractor, Dr. Alan Walch. Brown said that she had not seen Dr. Walch previously. Dr. Walch’s notes indicate that Brown was being seen on May 19, 2014, “due to injuries sustained while at work.” The “Onset” portion of Dr. Walch’s notes reiterates that Brown’s condition was the result of an accident at work, but it also says that the symptoms had been present for a few days. The notes also state that Brown “advises fitting [sic] heavy bag and feeling a pop in her back. She did not have immediate pain symptoms.” After examining Brown, Dr. Walch diagnosed her with a herniated disc and a sprain or strain and referred Brown to her primary-care physician. The notes also indicate that Brown should not return to work at that time.
The next day, May 20, 2014, Brown saw her personal doctor, Lea Clayton. Dr. *500 Clayton’s notes indicate that Brown had a disc bulge at the L-4/L-5 level of her spine. Nothing in Dr. Clayton’s notes indicate the cause of the disc bulge, but the diagnosis is shown as a chronic- condition. The physician’s notes dated June 24, 2014, indicate for the first time that Brown told Dr. Clayton that her back pain was caused by an injury at work.. Dr. Clayton’s notes of November 4, 2014, state for the first time what Brown was doing when the injury occurred, that is, that Brown was injured while picking up a window-unit air conditioner at work.
An MRI performed[1] on Brown’s spine indicated “degenerative desiccation and loss of disc height at L3-4 and L5-S1.” The MRI report stated:
“At L3-4, there is a small broad-based central disc herniation, which is causing indentation , of the anterior thecal sac and mild narrowing of the lateral recess bilaterally. The neural foramina are widely patent.
“At L5-S1, there is a very small broad-based central disc herniation, which resides completely within the epidural fat space and does not significantly impinge upon the thecal sac. It is causing mild narrowing of the lateral recesses bilaterally. The neural foramina are widely patent at this level as well.”
Dr. Clayton prescribed pain medication and muscle relaxers for Brown. Brown, who said that she was trained as a physical therapist, testified that she continued to have back pain, and so she continued treatment with. Dr. Clayton, Dr. Clayton’s notes dated June 8, 2014, indicate that she referred Brown to Dr. Matthew Bennett for treatment,, including possible injections “as [Brown] declines surgery at this time.” The notes from July 15, 2014, state that Brown’s pain was increasing and that she had back surgery scheduled for August 2014,
During her testimony, Brown acknowledged that Dr. Clayton had said that the “issues” with Brown’s back were degenerative and that they had occurred over time; Brown further conceded that there was no way to tell how long the condition had been present. However, Brown said, she had not hurt her back before the morning of May 19, 2014, nor had she suffered from any lower back pain before that morning.
Dr. Clayton did not testify at the eviden-tiary hearing. At the conclusion of that hearing, Brown’s attorney said that he wanted to give the trial court a brief and the testimony “adjacent” to the brief, which the attorney represented was Dr. Clayton’s deposition testimony. However, Dr. Clayton’s deposition was not marked as an exhibit, was not admitted into evidence, and the entire deposition is not included in the record on appeal. Excerpts of Dr. Clayton’s deposition were attached as' an exhibit to Lowe’s brief in support of its motion to determine medical necessity.
On May 21, 2015, the trial court entered an order approving Brown’s claim for workers’ compensation benefits and ordering Lowe’s “to immediately provide and pay for [Brown’s] medical treatment related to her back and to pay such other workers’ compensation benefits to which [Brown] is entitled pursuant to the Workers’ Compensation Act including, without limitation, temporary total disability benefits.” In the order, the trial court stated that the evidence presented was conflicting, that it could not reconcile the evidence, and that, as the trier of fact, it had *501 weighed the evidence, taking into account the interest or bias of the witnesses— noting that some of the witnesses did not appear to be on good terms with each other, the demeanor of the witnesses, and other factors in determining the truthfulness of the evidence presented. In doing so, the trial court said, it found that Brown had met her burden of proving both legal and medical causation. The trial court specifically found that Brown had suffered an accident on May 19,2014, that arose out of and in the course of her employment with Lowe’s and, further, that that accident had caused the injury for which Brown sought treatment. The trial court also found that the medical treatment Brown sought for her back was related to the accident.
Lowe’s filed a motion to alter, amend, or vacate the order, which was denied on July 9, 2015. On July 22, 2015, Lowe’s filed a notice of appeal in the trial court and a motion seeking a stay of further proceedings in the workers’ compensation case pending the outcome of the appeal. The trial court granted the motion to stay on July 23, 2015, and placed the case on its administrative docket.
In our opinion on original submission, this court held that, because the trial court did not determine the extent, if any, of Brown’s disability, there was no final judgment capable of supporting an appeal and that the time for filing a timely petition for a writ of mandamus had passed. Accordingly, we declined to review the matter and dismissed what we considered to be an untimely mandamus petition.
On rehearing, Lowe’s suggested that our original opinion was in conflict with Belcher-Robinson Foundry, LLC v. Narr, 42 So.3d 774 (Ala.Civ.App.2010), and its progeny. In Belcher-Robinson, this court wrote:
“In various contexts, this court has considered whether a particular trial-court decision adjudicating liability under the [Workers’ Compensation] Act is or is not a ‘final judgment’ within the scope of Ala.Code 1975, § 12-22-2. To be sure, a mere compensability determination that awards no relief, other than directing an employer to allow medical treatment, is not a ‘final judgment’ that is subject to appellate review, but is instead reviewable by an appellate court only by a petition for a writ of mandamus. See SouthernCare, Inc. v. Cowart, 48 So.3d 632 (Ala.Civ.App.2009). However, as Fluor Enterprises [Inc. v. Lawshe, 16 So.3d 96 (Ala.Civ.App.2009),] indicates, the rule is now emerging that when a trial court goes further, and awards medical benefits and temporary-total-disability benefits in addition to determining compensability, the trial court has rendered a final judgment that is susceptible to appellate review. See Fluor Enterprises, 16 So.3d at 99; BE & K, Inc. v. Weaver, 743 So.2d 476, 480 (Ala.Civ.App.1999); and Ex parte DCH Reg’l Med. Ctr., 571 So.2d 1162, 1164-65 (Ala.Civ.App.1990). Although Fluor Enterprises is in tension with certain other decisions of this court cited by the employee, such as SCI Alabama Funeral Services, Inc. v. Hester, 984 So.2d 1207, 1209-10 (Ala.Civ.App.2007) (main opinion in which one judge concurred and four judges concurred in the result), we are persuaded to follow the reasoning of Fluor Enterprises, a more recent (and, we might add, unanimous) opinion of this court.
“The trial court’s June 24, 2009, ruling determined, albeit summarily, that the employee’s accident arose out of and in the course of his employment, that the employer was responsible for the employee’s medical treatment, and that the employer was responsible for payment *502 of temporary-total-disability benefits. Moreover, it is undisputed that the employee has not reached maximum medical improvement so as to render ripe for decision the issue of the employee’s entitlement, if any, to permanent-disability benefits under the Act. Under Fluor Enterprises, a ‘judgment determining compensability and awarding both medical benefits and temporary-total-disability benefits [is] final for purposes of appeal,’ 16 So.3d at 99, and we therefore reject the employee’s contention that the ruling under review is not a final judgment.”
42 So.3d at 775-76. We note that, in Belcher-Robinson, the trial court did not specify the amount of temporary-total-disability benefits to be paid to the employee.
In this case, as in Belcher-Robinson, the trial court found that Brown’s injury arose out of and in the course of her employment, ordered Lowe’s to pay for medical treatment related to that injury, and ordered Lowe’s to pay Brown an unspecified amount of temporary-total-disability benefits, among other things. We are unable to distinguish Belcher-Robinson from this case. Accordingly, on the authority of Belcher-Robinson, we now expressly hold that if a trial court enters a judgment finding that an injury is compen-sable, ordering payment for medical treatment, and awarding temporary-total-disability benefits, regardless of whether the amount of those benefits is specified in the judgment, this court will treat such a judgment as final for purposes of appeal. To the extent previous opinions have suggested that such a judgment is nonfinal and that review of such a judgment should be by a petition for a writ of mandamus, those opinions are overruled.
Accordingly, the trial court’s order of May 21, 2015, was a final judgment for purposes of appeal. Lowe’s filed a timely postjudgment motion from the May 21, 2015, judgment, which was denied on July 9, 2015. Lowe’s then filed a timely notice of appeal. Therefore, we now address the merits of Lowe’s appeal.
On appeal, Lowe’s contends that the trial court erred in finding that Brown had had a work-related accident on May 19, 2014, or that Brown’s back injury was related to any such accident. Specifically, Lowe’s argues that Brown failed to meet her burden of proving either legal or medical causation for the back injury for which she seeks treatment and benefits.
“The standard of appellate review in workers’ compensation cases is governed by § 25 — 5—81(e), Ala.Code 1975, which provides:
“ ‘(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is ‘ “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Additionally, a trial court’s findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So.2d 1012 (Ala.Civ.App.1995). ‘This court’s role is not to reweigh the evidence, but to affirm the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are *503 drawn therefrom.’ Bostrom Seating, Inc. v. Adderhold, 852 So.2d 784, 794 (Ala.Civ.App.2002).”
Denmark v. Industrial Mfg. Specialists, Inc., 98 So.3d 541, 543-44 (Ala.Civ.App.2012). Furthermore,
“[w]hen evidence is presented ore ten-us, it is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanors, and not the appellate court, to make credibility determinations and to weigh the evidence presented. Blackman v. Gray Rider Truck Lines, Inc., 716 So.2d 698, 700 (Ala.Civ.App.1998).... The ‘appellate court must view the facts in the light most favorable to the findings of the trial court.’ Ex parte Professional Bus. Owners Ass’n Workers’ Comp. Fund, 867 So.2d 1099, 1102 (Ala.2003). ‘The legal conclusions of the trial court in a workers’ compensation case are reviewed de novo on appeal.’ Ex parte Morris, 999 So.2d 932, 936 (Ala.2008); see also Ex parte American Color Graphics, Inc., 838 So.2d 385, 387-88 (Ala.2002).”
Ex parte Hayes, 70 So.3d 1211, 1215 (Ala.2011).
As Lowe’s points out,
“ ‘[f]or an injury to be compensable under the Workers’ Compensation Act, the employee must establish both legal and medical causation.’ Ex parte Moncrief, 627 So.2d 385, 388 (Ala.1993). ‘Once legal causation has been established, i.e., that an accident arose out of, and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought.’ Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ.App.1989).”
Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1121 (Ala.2003).
Lowe’s argues that, for Brown to have established compensability in this case, the trial court had to have determined that every witness, other than Brown, who testified and the documentary evidence presented had to have been wrong. For example, regarding legal causation, Lowe’s asserts that Gargus, Brown’s supervisor, would had to have been “wrong” about Brown telling her that she had injured her back before Brown’s shift began on May 19, 2014; that Lauderdale, Brown’s coworker, would had to have been “wrong” regarding whether Brown had worked on the order picker the morning of May 19, 2014; and that Dr. Walch’s records would had to have been “wrong” regarding Brown’s report that symptoms of back pain had been present for a few days before Brown was seen on May 19, 2014.
On the other hand, Brown’s testimony was that she began her shift by helping to unload a truck and that her back did not hurt at that time. Later in the morning, Brown said, she was using the order picker to place a 150-pound air-conditioning unit on a storage rack and, as she was moving the air conditioner into place, she felt four pops in her back. Brown said that her legs immediately went numb and that she felt “shooting pains” down both sides. According to Brown’s testimony, Lauderdale was away from the order picker when the incident occurred. In its judgment, the trial court found it noteworthy that Gargus characterized Brown as a good employee and that Brown had been “Employee of the Month.” The trial court also found that Gargus had left the store before the accident was said to have occurred.
The trial court recognized the conflicts in the testimony and, in its judgment, acknowledged that, as the trier of fact, it could not reconcile those conflicts. Therefore, the trial court stated: “[Tjhis Court *504 has weighed the evidence taking into account the interest or bias of the witnesses, their demeanor, and various other factors in determining the truthfulness of evidence presented.” See Ex parte Hayes, 70 So.3d at 1215.
The Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975, provides that the word “accident,”
“as used in the phrases ‘personal injuries due to accident’ or ‘injuries or death caused by accident’ shall be construed to mean an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body or damage to an artificial member of the body by accidental means.”
§ 25-5-1(7). See also Ex parte Fairhope Health & Rehab, LLC, 175 So.3d 622, 627 (Ala.Civ.App.2015)(discussing the nature of an “accident” for purposes of the Act).
Brown’s testimony regarding the events of the morning of May 19, 2014, and her testimony regarding how she injured her back while moving an air-conditioning unit into place constitute sufficient evidence to support the trial court’s conclusion that Brown had been involved in a work-related accident that morning. Although other evidence presented could have led the trial court to reach a different conclusion, this court’s role is not to reweigh the evidence before the trial court or to make the credibility determination the trial court apparently did in deciding whether Brown had proved legal causation. Ex parte Hayes, 70 So.3d at 1215. In other words, it is not the function of an appellate court to decide which party’s evidence is better or more credible; instead, we are called upon only to review whether the trial court’s judgment is supported by sufficient evidence. As this court wrote in J.C. v. State Department of Human Resources, 986 So.2d 1172, 1184 (Ala.Civ.App.2007).
“The Alabama Supreme Court has stated that ‘the law is settled that weighing evidence is not the usual function of an appellate court. This is especially true where ... the assessment of the credibility of witnesses is involved.’ Knight v. Beverly Health Care Bay Manor Health Care Ctr., 820 So.2d 92, 102 (Ala.2001) (citation omitted). Accordingly, appellate courts in this state generally do not review evidence in order to make factual conclusions; instead, they review judgments in order to determine whether the trial court committed reversible error. Because our appellate courts do not act as fact-finders, they do not utilize standards of proof but, instead, apply standards of appellate review.”
Our standard of review in this case requires us to view the facts in the light most favorable to the findings of the trial court and to affirm the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom. Denmark, 98 So.3d at 543-44.
Based on our standard of review and the record before us, we cannot say that the trial court’s determination that Brown proved legal causation is not supported by the evidence or is plainly and palpably wrong.
Lowe’s also challenges the trial court’s determination that Brown proved medical causation. Specifically, Lowe’s contends that Brown failed to present substantial evidence to support the finding that her back condition was caused by a work-related injury. In support of its argument, Lowe’s cites Dr. Walch’s notes of May 19, 2014, which stated that Brown’s symptoms had been “present for a few days” and that she “did not have immediate pain symp *505 toms.” Lowe’s also cites the medical records from Dr. Clayton that indicate that Brown’s lower back pain was caused by a chronic condition involving a disc bulge in her lower back. Dr. Clayton indicated that Brown’s back condition had been present more than a day or so when she examined Brown on May 20, 2014. In the deposition excerpt Lowe’s submitted in support of its brief regarding the determination of medical necessity, Dr. Clayton testified that Brown had a degenerative disc and that “degeneration usually means a process over time.” Therefore, Lowe’s argues, Brown’s back condition could not have been caused by the accident on May 19, 2014.
As previous opinions of this state’s appellate courts have explained, the finder of fact can consider lay testimony as well as the testimony of medical experts when considering the issue of medical causation.
“In Ex parte Price, 555 So.2d 1060 (Ala.1989), our supreme court stated: ‘As the finder of facts, ... the trial court is authorized to draw any reasonable inference from the evidence, including conclusions of medical facts that are not within the peculiar knowledge of medical experts.’ Price, 555 So.2d at 1062. Accordingly,
“‘lay testimony may combine with medical testimony to supply th[e] requisite proof; and ... the medical testimony, when viewed in light of lay evidence, may amply support the medical causation element without the expert witness’s employing any particular requisite language. It is in the overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay and expert evidence, and not in the witness’s use of any magical words or phrases, that the test finds its application.’
“555 So.2d at 1063.
“Based on Price, a trial court may make a finding of medical causation without the benefit of any direct expert medical testimony, so long as the other evidence is sufficient to sustain its finding. The question whether a worker has satisfactorily proven the causal relationship between a work-related accident and a particular injury ‘in the absence of medical testimony, or by lay testimony coupled with medical evidence, must be determined on a case-by-case basis.’ Price, 555 So.2d at 1062. That question is one of fact to be decided in the first instance by the trial court. See Stewart v. ATEC Assocs., Inc., 652 So.2d 270, 274 (Ala.Civ.App.1994); and Statewide Painting Co. v. Sharron, 693 So.2d 518 (Ala.Civ.App.1997). On appellate review, ‘“[w]e will not reverse the trial court’s finding of fact if that finding is supported by substantial evidence — if that finding is supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” ’ Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1121 (Ala.2003) (quoting Ex parte Trinity Indus., Inc., 680 So.2d 262, 268-69 (Ala.1996), quoting in turn West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).”
Hokes Bluff Welding & Fabrication v. Cox, 33 So.3d 592, 595-96 (Ala.Civ.App.2008).
Brown testified that she had never had back trouble before the May 19, 2014, incident. She also said that she had not been a patient of Dr. Walch before May 19, 2014, and that the morning of May 19, 2014, was the first time she sought treatment for pain in her lower back. In response to questioning about the statement in Dr. Walch’s notes that Brown’s back *506 had been hurting for a few days before she sought treatment, Brown testified that she “had been on the order picker for five consecutive days prior to this injury and it could have happened at any time. But just like anything else, it has a popping point.” She denied that her back had been hurting for a few days, adding that her back “popped” the morning of May 19, 2014. At that time, Brown said, she felt “immediate pain” shoot down her legs. Brown testified that she has continued to have pain since the incident.
We agree with Lowe’s that, from the evidence presented, a logical inference would be that Brown already had a degenerative back condition at the time of the May 19, 2014, incident. However, there is no evidence to indicate that Brown was unable to do her job before the incident. We also note that there is no medical evidence in the record indicating that Brown had a history of back pain or that she had sought medical treatment for a back condition before May 19, 2014. There is no question that Brown suffers from two herniated discs. However, Dr. Clayton was unable to provide a time as to when the herniations occurred, based on the MRI and her examinations of Brown.
It is well settled that an employee who suffers from a preexisting condition
“is not precluded from recovering workers’ compensation benefits merely because his or her condition existed before the work-related incident giving rise to a workers’ compensation claim. See McAbee Constr., Inc., v. Allday, 135 So.3d 968, 974 (Ala.Civ.App.2013). As we have explained:
“ ‘A worker who has a preexisting condition is not precluded from collecting workers’ compensation benefits if the employment aggravates, accelerates, or combines with, a latent disease or infirmity to produce disability. Ex parte Lewis, 469 So.2d 599 (Ala.1985). A preexisting condition that did not affect the [worker’s] work performance before the disabling injury is not considered, pursuant to the Act, to be a pre-existing condition. Associated Forest Materials v. Keller, 537 So.2d 957 (Ala.Civ.App.1988).’
“Waters v. Alabama Farmers Coop., Inc., 681 So.2d 622, 623-24 (Ala.Civ.App.1996).”
SouthernCare, Inc. v. Cowart, 146 So.3d 1051, 1063 (Ala.Civ.App.2013).
From the evidence in the record, the trial court reasonably could have found that Brown had a preexisting degenerative back condition but that that condition did not become symptomatic or prevent Brown from doing her job until she attempted to move the 150-pound air-conditioning unit onto a shelf. In other words, the trial court could have found that Brown’s back condition was latent or asymptomatic before the May 19, 2014, accident but that, in moving the air-conditioning unit, Brown sustained an injury that has left her unable to perform her job.
Based on the record before us, we conclude that the trial court’s finding that Brown presented substantial evidence of medical causation is not plainly or palpably wrong. Again, to disregard Brown’s testimony regarding the pain she felt when her back popped while moving the air-conditioning unit and the subsequent continuing pain she has experienced since that incident would require this court to improperly reweigh the evidence. Ex parte Hayes, 70 So.3d at 1215.
For the reasons set forth above, we affirm the trial court’s judgment finding that Brown suffered a compensable injury on May 19, 2014, and ordering Lowe’s to pay for the medical treatment related to *507 her back injury, as well as to pay Brown temporary-total-disability benefits.
APPLICATION GRANTED; OPINION OF JANUARY 22, 2016, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The date the MRI was performed cannot be read on the copy of Brown’s records provided to this court; however, the physician's notes regarding the MRI were transcribed on May 27, 2014. The MRI report was electronically signed on May 28, 2014.