Gregory B. Pair sued his employer, Jack's Family Restaurants, Inc., d/b/a/ Jack's Restaurant ("Jack's"), on July 31, 1997, seeking to recover workers' compensation benefits for injuries he claimed to have sustained on March 28, 1997, during the course of his employment with Jack's. Following an ore tenus proceeding, the court, on July 12, 1999, entered an order denying benefits, finding that Pair's alleged injury did not arise out of or in the course of his employment with Jack's. Pair appeals.
This case is governed by the new Workers' Compensation Act. This new Act provides that an appellate court's review of the proof and its consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(1), Ala. Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. §25-5-81(e)(2). Our supreme court "has defined the term `substantial evidence,' as it is used in § 12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte TrinityIndus., Inc., 680 So.2d 262, 268 (Ala. 1996), quoting West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012,1014 (Ala.Civ.App. 1995).
Pair testified that on March 28, 1997, he lifted a 100-pound box of frozen chicken and felt a "strain inside [his] insides, felt like something tore it." He stated that he felt a "wetness" in his pants and went to the restroom and discovered that he was bleeding from his rectum. Pair testified that he informed Fred Marcum, the assistant manager, of the accident and that Marcum instructed him to go home. Pair stated that a fellow employee, Belinda Downs, was present when he informed Marcum of the accident. Pair's wife Kerri was also employed at Jack's; however, they worked different shifts. Kerri testified that Pair was sent home around 1:30 p.m. on the day he was injured. She stated that she went to work at 2:00 p.m. and that she informed the management that Pair had been injured while doing some lifting, that he was bleeding, and that he needed to be seen by a doctor. *Page 680 
Pair testified that following the accident he experienced bleeding, a severe burning sensation, and a great deal of discomfort. He stated that he was unable to work, drive an automobile, or go out in public. He further stated that he had never previously experienced a similar problem.
Pair testified that he sought treatment from Dr. Richard Lowe, his personal doctor, the day following the accident.[1]
Dr. Lowe's records indicate that he treated Pair on several occasions. Pair was seen by Dr. Lowe on June 25, 1997, and was diagnosed with hemorrhoids. Dr. Lowe's records do not indicate that Pair told Dr. Lowe until June 30, 1997, that he had injured himself at work while lifting boxes of chicken. On July 15, 1997, Dr. Lowe's diagnosis was that Pair suffered from both internal and external bleeding hemorrhoids, and he recommended surgery. Dr. Lowe also determined that Pair was unable to work at that time. Dr. Lowe further stated that Pair's lifting of the box of chicken while at work had caused or contributed to Pair's hemorrhoids.
Pair was seen by Dr. Boyde J. Harrison on April 2, 1997 — five days after the alleged injury. Dr. Harrison's records indicate that Pair gave him a history of straining his lower back while at work. Dr. Harrison diagnosed Pair with an acute left-side internal hemorrhoid and prescribed him an ointment. Dr. Harrison also recommended surgery for Pair to correct the condition. Pair returned to Dr. Harrison on April 4, 1997, indicating that he was not any better and that he was still experiencing a painful burning sensation.
On July 8, 1997, Dr. Harrison stated in a letter that he had diagnosed Pair with an acute left-sided hemorrhoid and that he recommended surgery at that time. Dr. Harrison stated that Pair continued to suffer from the hemorrhoid and that he was unable to return to work until he had the surgery. On July 9, 1997, Pair's attorney requested an opinion from Dr. Harrison as to whether Pair's accident had caused or had contributed to his medical condition. Dr. Harrison concluded, based on Pair's description of his on-the-job accident, that the accident had caused or had contributed to his medical condition.
Pair was, at the request of Jack's workers' compensation insurance carrier, next seen by Dr. J. Johnson for another opinion.[2] Pair told Dr. Johnson that he had felt a "pain and strain sensation in his rectum" while lifting a box of chicken at Jack's and an immediate onset of rectal bleeding. Pair further informed Dr. Johnson that he continued to experience rectal bleeding two to three times per week and that bowel movements were extremely painful. Dr. Johnson diagnosed Pair with rectal bleeding and probable internal thrombosed hemorrhoids, concluding that if Pair continued to experience problems with the hemorrhoids he would need surgery.
On August 14, 1997, Pair was seen by Dr. Gregory S. Windham, who diagnosed Pair with a large anal fissure that was associated with both internal and external hemorrhoids. Dr. Windham performed an *Page 681 
internal and external hemorrhoidectomy and anal fissurectomy on August 20, 1997. Dr. Windham's records indicate that he last treated Pair on October 2, 1997; that he was without complaints; and that he was well healed from the surgical procedure. Dr. Windham released Pair to return to work at that time.
Pair testified at trial that approximately one year after he was last treated by Dr. Windham he still experienced pain and bleeding associated with his medical condition. He stated that he experiences increased bleeding and pain when he attempts to lift objects in excess of 25 pounds and that he is unable to work. Although Pair testified that he was still experiencing pain and bleeding, he stated that he had not sought additional medical treatment for the symptoms.
Belinda Downs, a co-employee of Pair's, testified that on the day Pair claimed to have injured himself Marcum had instructed Pair to move the box of chicken. She stated that she was present when Pair informed Marcum of the accident, and she stated that Pair told Marcum that he had hurt his back while lifting the box of chicken. Downs said that she was unaware at that time that Pair had stated that he was bleeding; however, she said that she was present and heard Pair's wife Kerri inform the management later that day that Pair was bleeding and was in a great deal of pain.
For an injury to be compensable, it must be "caused by an accident arising out of and in the course of" the employee's employment. § 25-5-51, Ala. Code 1975. The phrase "arising out of" an employee's employment requires a causal connection between the injury and the employment. Dunlop Tire Rubber Co. v.Pettus, 623 So.2d 313 (Ala.Civ.App. 1993). The phrase "in the course of" the employee's employment refers to the time, place, and circumstances under which the accident occurred. Id. In accidental cases, i.e., those involving a sudden and traumatic event, an employee must produce substantial evidence tending to show that the alleged accident occurred and must also establish medical causation by showing that the accident caused or was a contributing cause of the injury. Ex parte Trinity Indus., Inc., 680 So.2d at 266 n. 3 Medical causation may be found by the trial court without testimony from medical doctors. Ex parte Price,555 So.2d 1060 (Ala. 1989). The totality of the evidence, including both lay and expert testimony, may satisfy a showing of medical causation. U.S. Steel, A Division of USX Corp. v. Nelson,634 So.2d 134 (Ala.Civ.App. 1993).
After carefully reviewing the record, we conclude that the court erred in finding that Pair's injury did not arise out of and in the course of his employment. The evidence indicates that Pair suffered a sudden and traumatic event when he lifted the 100-pound box of chicken. Pair's description of the event at trial was as a "strain inside [his] insides, like something tore it." Dr. Harrison's records describe the event as strain to Pair's lower back while at work. Dr. Lowe's records indicate that Pair "hurt self lifting boxes of chickens." Dr. Johnson's records describe the event as a "pain and strain sensation in [Pair's] rectum." We note that the accident was described differently; however, the undisputed evidence indicates that Pair strained himself when he lifted a 100-pound box of chicken while working. Pair was subsequently diagnosed and treated for hemorrhoids. Unrefuted medical evidence, presented in the form of opinions by Dr. Lowe and Dr. Harrison, indicated that the accident had contributed to his having the hemorrhoids. This court has held that a trial court has wide discretion in determining workers' compensation cases; however it cannot ignore undisputed evidence.Tarver v. Diamond Rubber Products Co., 664 So.2d 207
(Ala.Civ.App. 1994).
Accordingly, we must reverse the judgment of the trial court and remand the *Page 682 
case for further proceedings, including the determination of disability, if any.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] In its order, the court noted that although Pair testified that he was seen by Dr. Lowe the day after the alleged injury, Dr. Lowe's records indicated that Pair had not visited him until June 25, 1997, approximately three months after the injury. However, plaintiff's "Exhibit 4" introduced into evidence at trial indicates that Pair's attorney had submitted a request to Dr. Lowe on May 22, 1997, asking him for an opinion as to whether Pair's employment had caused the injury, his diagnosis of Pair, the date of maximum medical improvement, and an opinion as to whether Pair could work. One could conclude from this that Pair was seen by Dr. Lowe before June 25, 1997. Dr. Lowe responded to this request on July 15, 1997.
[2] Jack's initially refused to authorize treatment for Pair, including the surgery that had been recommended by Dr. Lowe and Dr. Harrison. However, Jack's, after concluding its investigation of Pair's claim, eventually recognized the compensability of the claim and authorized medical treatment including surgery. Jack's also paid Pair temporary total disability benefits as the result of his injury.