On December 18, 2001, Donald Page ("the employee") filed an action in the Houston Circuit Court against his employer, Cox 
Cox, Inc. ("the employer"), seeking workers' compensation benefits for an injury to his knee. The employee alleged that he had suffered the knee injury as a result of an accident arising out of and in the course of his employment when he fell from a ladder on or about October 19, 2000. The employer answered the complaint and subsequently filed a summary-judgment motion. The motion stated in part:
 "The undisputed evidence in this case is that, although [the employee] did have an incident on October 19, [2000], that [the employee] had previously been treated in 1996 for this knee, and surgery was recommended at that time; however, [the employee] had no money to pay for the same. According to [the employee's] treating physician for this incident, Dr. Keith Granger, he does not feel the tear is the direct result of his injury of October 19, 2000. Therefore, the undisputed proof is that nothing further is due by [the employer] and summary judgment should be granted in favor of [the employer]."
The summary-judgment motion filed by the employer was accompanied by a photocopy of a letter dated January 13, 2001, from a claims-management company to Dr. Granger, the employee's treating physician. The letter states that "[a]n MRI was obtained on 5-21-01 of [the employee's] right knee, which shows an oblique tear of the posterior and central aspect of the medial meniscus." Among other things, the letter then asks Dr. Granger to make a notation on the letter in response to the following question: "In your opinion, do you feel this tear is a direct result of [the employee's] injury of 10-19-00?" The letter inquires only as to the cause of the "tear"; it does not ask Dr. Granger whether any symptoms or difficulties experienced by the employee since the accident on October 19, 2000, could be attributed to the October 2000 accident or whether that accident could have aggravated or exacerbated a preexisting injury, i.e., the tear. In response, Dr. Granger indicated that the tear was not a direct result of the employee's October 19, 2000, accident.[1]
The employee filed a response to the employer's summary-judgment motion, along with his affidavit in support thereof, asserting that his preexisting knee injury had not prevented him from performing his job with the employer in a normal *Page 415 
manner between 1996 and the date he fell off the ladder. The response stated, in part:
 "According to the documents provided by the [employer] in this case either in March 1994 or March 1996, [the employee] is reported to have received an injury to his right knee while working out in California. Around March 1996, [the employee] was seen by Dr. James DeHaven at Southern Bone and Joint Specialists, P.C. Dr. DeHaven by clinical examination merely `suspected' an anterior cruciate ligament tear and `probably' a medial meniscus tear. However, because [the employee] had no money, no MRI or other definitive radiological or arthroscopic investigation was performed to support the clinical impression. [The employee] was referred to Vocational Rehabilitation at [Southern Bone Joint Specialists], by Dr. DeHaven."
The employee's affidavit stated:
 "On or about March, 1996, I was having discomfort in my knee, not related to any work activities to the best of my knowledge, and went to the doctors at Southern Bone and Joint [Specialists] for an evaluation. The doctor at Southern Bone Joint [Specialists] examined my knee but did not take any X-rays or any other kinds of tests, at that time. Since that time, in 1996, I have been employed by various employers as a construction laborer and have not had any difficulty performing my duties in the normal manner.
 "During my employment with [the employer], I did the following labor before the injury to my knee: laying floor tiles, and when laying floor tiles 99% of the time is spent on the knees, I also did framing, sheet rock hanging, electrical wiring, plumbing, and various other jobs. [The employer] never complained about my ability to work or the quality of my work. I was able to perform these tasks in a normal manner and without any difficulty from my knee. It was not until after the accident that I started having difficulty performing those tasks.
 "I was injured while under the employ of [the employer], and performing my normal duties as one of the [employer's] workers or laborers. When I [fell] off the ladder I fell and landed upon my right knee on a sharp object and I was told by my supervisor to go to the Emergency Room in Ozark, for treatment. Since that injury I have had much difficulty with my right knee. Since 1996 and during my employment with [the employer], I have had no disability in my ability to perform my work or duties. I have been called upon, frequently, to climb ladders, do heavy lifting, and other associated construction tasks without any difficulty whatsoever. It was not until the injury occurred, as a result of the fall, that I have suffered the problems that I presently suffer with my right knee."
(Emphasis added.)
On August 26, 2002, the trial court entered an order on the case action summary sheet that stated: "Summary judgment is due to be granted, however, case continued and reset to September 25, 2002." The record indicates that the trial court apparently continued the hearing on the summary-judgment motion to allow the employee the opportunity to submit evidence on the issue of medical causation. On September 23, 2002, the employee filed a motion styled as a "Motion to Amend, Alter or Vacate Order on Defendant's Summary Judgment Motion"; attached to that motion was an unsigned facsimile copy of a letter from Dr. Granger, dated September 18, 2002, in which Dr. Granger *Page 416 
opined that the injury the employee suffered as a result of his falling off the ladder while working for the employer had aggravated and exacerbated a preexisting problem.
At the September 25, 2002, summary-judgment hearing, the employer filed a motion to strike Dr. Granger's September 18 letter because, it claimed, the letter was neither authenticated nor certified; the trial court granted the motion to strike and refused to consider the letter. Also on that same date, but after the summary-judgment hearing had been completed, the employee filed an "amended" motion to alter, amend, or vacate the judgment, and he attached to that motion what the employee refers to as a "certified"[2] copy of Dr. Granger's September 18, 2002, letter. Thereafter, on October 9, 2002, the employee filed a motion to supplement his amended motion to alter, amend, or vacate the judgment; attached to that motion was the purported certified copy of Dr. Granger's September 18 letter and an affidavit executed by Dr. Granger, dated October 8, 2002, in which Dr. Granger stated that the injuries sustained by the employee when he fell off a ladder while working for the employee had aggravated and exacerbated a preexisting problem. The employee subsequently filed a motion asking the trial court to set his pending postjudgment motion for a final hearing; the matter was scheduled for a hearing on December 18, 2002.
At the hearing on December 18, the trial court stated:
 "[The employer] filed the Motion for Summary Judgment, which is most certainly proper under the law and . . . supports it with proper evidence before the Court. You know, at that point, the law says that [the employee has] got to respond to that by substantial evidence. [The employee was] unable to do so. And the Court said okay, well, due to be granted, but I will give [the employee] thirty days. [Counsel for the employer] is correct; we had a second hearing, which is the way [counsel for the employer] characterized it, a second bite at the apple. The Court did not want to throw it out if proper evidence could be put before the Court. It still wasn't.
 "For me to do anything other than deny this motion is to be unfair to [the employer]. You [counsel for the employee] say well, you know, unfair to the employer, unfair to the employee, that doesn't seem right. But, it is a matter of law. It is a matter of following the procedures. For me to ignore the law and ignore these procedures set out in the Alabama Rules of Civil Procedure would be basically to just ignore [the employer] and ignore the law and just be biased, quite frankly. Now, I did make every attempt to give you [counsel for the employee] an opportunity to present this. And now, as I think it was characterized, this is now the third bite at the apple.
 "Now, y'all have your remedy. I am not the end all here. It can be appealed, as y'all are well aware. And, if I am wrong, they can tell me I am wrong. Then, we might can get on to this issue. . . .
 "So, anyway, [the employee's] Motion to Alter or Amend or Vacate is denied. The Summary Judgment Order of August 26 remains in effect."
On that same date, the trial court entered the following order on the case action summary *Page 417 
sheet: "After hearing, [the employee's] motion to alter, amend or vacate is denied for reasons enunciated by the Court. This Court's summary judgment order entered Aug. 26, 2002, and made final Sept. 25, 2002, remains in effect."
The employee appealed. This court remanded the cause to the trial court on May 20, 2003, for the trial court to enter an order in compliance with § 25-5-88, Ala. Code 1975. The trial court subsequently entered, on May 28, 2003, an order complying with § 25-5-88.
The employee contends that the trial court erred in entering the summary judgment in favor of the employer because, he argues, the evidence as to medical causation was not undisputed. The employee contends that his own affidavit created a genuine issue as to this material fact.
The appropriate standard of review of a summary judgment is as follows:
 "It is well settled that a motion for summary judgment is properly granted in situations where there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Clay v. River Landing Corp., 601 So.2d 919 (Ala. 1992). In considering a motion for summary judgment, the trial court must view all reasonable inferences from the evidence in a light most favorable to the non-moving party. Wills v. Klingenbeck, 455 So.2d 806 (Ala. 1984). Further, the movant has the burden of establishing that there is no genuine issue of material fact. Burks v. Pickwick Hotel, 607 So.2d 187 (Ala. 1992). If the movant meets its burden, then the burden shifts to the non-moving party, who must show by substantial evidence that a genuine issue of material fact does exist in order to withstand the motion for summary judgment. Burks, 607 So.2d 187; Clay, 601 So.2d 919."
Rich v. Warren Mfg., Inc., 634 So.2d 1015, 1016-17
(Ala.Civ.App. 1994).
In addition, this court has stated:
 "For an injury to be compensable, it must be `caused by an accident arising out of and in the course of' the employee's employment. § 25-5-51, Ala. Code 1975. The phrase `arising out of' an employee's employment requires a causal connection between the injury and the employment. Dunlop Tire Rubber Co. v. Pettus, 623 So.2d 313 (Ala.Civ.App. 1993). The phrase `in the course of' the employee's employment refers to the time, place, and circumstances under which the accident occurred. Id. In accidental cases, i.e., those involving a sudden and traumatic event, an employee must produce substantial evidence tending to show that the alleged accident occurred and must also establish medical causation by showing that the accident caused or was a contributing cause of the injury. Ex parte Trinity Indus., Inc., 680 So.2d [262] at 266 n. 3 [(Ala. 1996)]. Medical causation may be found by the trial court without testimony from medical doctors. Ex parte Price, 555 So.2d 1060
(Ala. 1989). The totality of the evidence, including both lay and expert testimony, may satisfy a showing of medical causation. U.S. Steel, A Division of USX Corp. v. Nelson, 634 So.2d 134 (Ala.Civ.App. 1993)."
Pair v. Jack's Family Rests., Inc., 765 So.2d 678, 681
(Ala.Civ.App. 2000) (emphasis added).[3] *Page 418 
In the present case, the employee testified by affidavit that he fell from a ladder onto a sharp object on October 19, 2000. He further testified in his affidavit that, before this accident, he could perform all of his job duties without any difficulty and that it was not until after this accident that he started having difficulty performing his job duties. Aligned against the employee's affidavit in the present case is a brief notation of a single physician stating merely that the original, or underlying, problem with the employee's knee, a tear in the medial meniscus, was not a direct result of the October 2000 accident, a statement that does not address the possibility that the October 2000 accident exacerbated or aggravated the employee's preexisting condition. If we are to abide by the well-established principle, as declared by both this court and our Supreme Court, that medical causation may be found to exist even in the absence of supporting testimony from a medical expert, this would appear to be a case in which, under that principle, a genuine issue exists as to medical causation. See, e.g., Ex parte Price,555 So.2d 1060, 1062 (Ala. 1989) (quoting 3 A. Larson, The Law ofWorkmen's Compensation § 79.51(b) and (c), at pp. 15-426.149-.160 (1988), quoting in turn Valente v. BourneMills, 77 R.I. 274, 279, 75 A.2d 191, 194 (1950)) ("`"Thus where, as in the instant case, injury appears in a bodily member reasonably soon after an accident, at the very place where the force was applied and with symptoms observable to the ordinary person, there arises, in the absence of believed testimony to the contrary, a natural inference that the injury, whatever may be the medical name, was the result of the employment."'").
In Cagle v. Brock Blevins, Inc., 723 So.2d 65 (Ala.Civ.App. 1998), we explained:
 "If the employment aggravates, accelerates, or combines with a latent disease or infirmity to produce disability, the pre-existing disability does not disqualify the employee's claim under the `proximate cause' requirement of the [Workers' Compensation] Act. Godbold v. Saulsberry, 671 So.2d 80 (Ala.Civ.App. 1994). If the employee was able to perform his duties prior to the injury, no pre-existing condition is present for the beneficent purpose of the Act. Id."
723 So.2d at 68. See also Hypeco, Inc. v. Hawkins,641 So.2d 802 (Ala.Civ.App. 1994); and Blue Circle, Inc. v. Williams,579 So.2d 630 (Ala.Civ.App. 1991).
The employee's burden at the summary-judgment stage as to the issue of medical causation is to adduce "substantial evidence" supporting the propositions (1) "that the alleged `accident' occurred," and (2) "that the `accident' was [at least] a contributing cause of the complained-of injuries." Ex parteTrinity Indus., Inc., 680 So.2d 262, 266 n. 3 (Ala. 1996);Pair, 765 So.2d at 681. After carefully reviewing *Page 419 
the record in the present case in the light most favorable to the nonmoving party (i.e., the employee), we conclude that the employee, through his affidavit testimony, presented substantial evidence that he fell off a ladder while he was performing work duties for the employer and that the impact of the accident caused an injury to his knee, or at least aggravated or exacerbated a preexisting knee injury that previously had not prevented him from performing his work duties in a normal manner. The trial court's decision not to consider Dr. Granger's September 18, 2002, letter and his October 8, 2002, affidavit, while appropriate, does not change this result. Compare Guck v.Daniel Son, Inc., 848 So.2d 1001 (Ala.Civ.App. 2002) (finding there to be a genuine issue of material fact and therefore reversing a summary judgment in favor of the employer where the record consisted of only the deposition testimony of a chiropractor and the deposition testimony of the injured employee).
Our sole inquiry is whether the trial court properly entered a summary judgment in favor of the employer on the employee's workers' compensation claim. "[F]actual disputes are to be resolved by the trial court on the merits," and "[a] summary judgment is not proper if conflicting inferences can be drawn from the evidence." Van Prewitt v. Mobile Policemen's Firefighters' Pension Relief Fund Bd., 664 So.2d 223, 224
(Ala.Civ.App. 1994); see also Guck, 848 So.2d at 1004. We conclude that genuine issues of material fact remain in this cause; therefore, the summary judgment entered in favor of the employer is reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, J., concur.
PITTMAN, J., dissents, with writing, which THOMPSON, J., joins.
[1] The responsive notation by Dr. Granger on the face of the claims-management company's letter to him was not sworn. The employee did not complain at trial, nor does he argue on appeal, that Dr. Granger's notation on the letter was inadmissible hearsay.
[2] This "certified" copy was stamped "Custodian of Records, Jamie L. Falson" and contains the signature of Jamie L. Falson dated September 25, 2002; beneath this signature was the signature of Mable M. Odom, beneath which appeared a notary-public stamp.
[3] The dissenting opinion finds fault with our reliance onRich and Pair, arguing that those cases are "inapposite" to the present case. ___ So.2d at ___. While the facts of those cases may be distinguishable from the facts of the present case, the basic principles reiterated in those cases are indeed apposite. The portion of Rich relied upon in the text discusses, in the context of a workers' compensation case, basic and well-established trial court review standards and burdens of proof applicable to motions for a summary judgment. Likewise, that portion of Pair relied upon in the text discusses basic and well-established principles relating to proof of causation in workers' compensation cases. The last sentence of the quoted passage in Pair explains that it is "[t]he totality of the evidence, including both lay and expert testimony" that must be examined to determine whether a plaintiff has made a satisfactory showing of medical causation. 765 So.2d at 678. Moreover, it is in the context of a reference to this "totality of the evidence, including both lay and expert testimony" standard that the court in Pair also reminds the reader that "[m]edical causation may be found by the trial court without testimony from medical doctors." Id. These principles go to the heart of the issue before us in the present case, and, therefore, the discussion inPair of these principles, as quoted above, is indeed applicable to the present case.